### Chicago, Rock Island & Pacific Railway Company *v.* Cunningham Commission Company.

### Opinion delivered February 5, 1917.

1.  CARRIERS—DELAY IN TRANSPORTATION OF FREIGHT.—In an action for damages for failure by defendant carrier to transport and deliver shipments of grain promptly, *held*, the evidence was sufficient to establish negligent delay on the part of the railroad company.
2.  CARRIERS—DELAY IN DELIVERING FREIGHT—MEASURE OF DAMAGES.— The measure of damages for negligent delay in the transportation of freight by a common carrier is the difference between the value of the freight at the time it was delivered and its value at the time it should have been delivered, unless the carrier had notice that special damages, or more than ordinary damages, would result from a failure to deliver in time.
3.  CARRIERS—DELAY IN DELIVERING FREIGHT—"LOSS OR DAMAGE"— PROVISION IN A BILL OF LADING.—A bill of lading, covering a shipment of freight, provided that the amount of any loss or damage for which the carrier may be liable, shall be computed in a basis of the value of the property at the time of shipment. *Held*, the words "loss or damage" refer only to cases where the goods are lost in transit, or are physically injured while in transit, and do not refer to damages resulting from a delay in the transportation and delivery of the same.

4.  CARRIERS—FUNCTION OF BILL OF LADING.—The bill of lading covering a shipment of freight, *held*, to be both an acknowledgment of the receipt of the goods for carriage and a contract to carry safely and to deliver in a reasonable time.

5.  CARRIERS—DELIVERY OF FREIGHT—REASONABLE TIME.—A contract to transport freight implies an agreement to transport and deliver in a reasonable time. Although a bill of lading does not fix the time in which the freight shall be delivered, the law implies that it shall be delivered within a reasonable time.

6.  CARRIERS—DELAY IN DELIVERY OF FREIGHT—LIMITATIONS.—A shipper of freight may recover damages for delay in the transportation and delivery of freight, in an action founded on contract, and the five-year statute applies to a claim founded on such a contract.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; affirmed.

*Thomas S. Buzbee* and *Geo. B. Pugh* for appellant.

1.  There is no evidence that appellee lost anything on these grain shipments, even if it be conceded that they were unreasonably delayed. It was error for appellee to assume that if a car was delayed in transit it had a right to decline to receive it and compel appellant to take it and dispose of it and pay appellee the invoice price. 99 Ark. 568.

2.  In a great majority of cases and cars there was no unreasonable delay. Seven days is not a long enough time and it was improper to count the day of the signing of the bill of lading. Acts 1907, p. 453.

3.  The measure of damages should be based on the market price of the grain at the point of shipment. The shipments are interstate and the damages are fixed by the bill of lading. The State laws must give way to the Federal laws. 108 Ark. 115; 226 U. S. 491. Interstate Com. Act, June 29, 1906, 34 Stat. 584, 595; 227 U. S. 657; 108 Ark. 115; 31 I. C. C. 693.

4.  Eight of the shipments were by other carriers as the initial shippers who were liable under the federal law.

5.  The claims arising prior to Aug. 8, 1911, were barred by the three year statute of limitations.

*Geo. A. McConnell* for appellee.

1.  Plaintiff was damaged by the delay of the grain and the court so found. It is conceded that the defendant was not bound to take the car and dispose of the grain, but after refusal to do so it must pay the damages.

2.  The cars were unreasonably delayed. Seven days was proven a reasonable time and the court so found upon the evidence. This is as final as the verdict of a jury. 90 Ark. 512, 102 *Id.* 203. The day of the signing of the bill of lading was not included. The market price at point of shipment is not the criterion as to price.

3.  The measure of damages as fixed by the bill of lading does not apply. The rule is the difference between the market value of the goods at the time and place when and where they should have been delivered and their value when delivered with interest. 73 Ark. 112; 115 *Id.* 20; 81 S. E. 741; 116 S. W. 1122; 75 S. W. 786; 123 *Id.* 1034.

4.  There is a written contract and the five year statute of limitations applies. 100 Ark. 269, 279.

Hart, J. Appellee is a corporation dealing in grain in the City of Little Rock and appellant is a railroad corporation engaged in interstate commerce.

On August 8, 1914, appellee filed before a justice of the peace fifty separate claims against appellant to recover damages for grain lost in transit and for negligent delay in transporting and delivering grain. The earliest claim bore the date of August 10, 1910, and the latest, of July 6, 1914. None of the claims exceeded the jurisdiction of the justice of the peace and were in various amounts from $2.65 to $138.75.

Judgment was rendered in favor of appellee before the justice of the peace and appellant appealed to the circuit court. There the cases were tried before the court sitting as a jury and the court found for appellee in the sum of $1,939.97 and rendered judgment for it against appellant for that sum. The case is here on appeal.

Appellee does a grain business in the City of Little Rock, receiving, shipping, grinding, sacking, mixing and manufacturing chops, corn and other products of grain and different sorts of feed. Ninety-eight per cent of its business is buying and selling in car loads. It handles approximately from two to four thousand cars of grain per year. Seventy or eighty per cent. of its grain is bought at Omaha, Council Bluffs, and Davenport. The experience of officers of the company extending over a period of twenty or twenty-five years, shows that the length of time necessary for grain to reach Little Rock from the above named points is six, seven or eight days.

In making the claims in the present case seven days after the day the grain was shipped is made the basis; that is to say, seven days is allowed for the grain to reach Little Rock, not including the day on which the grain was delivered to the railroad company at the point of shipment and the day when the car reaches any point in the yards of the railroad at Little Rock is counted as the day of arrival.

Appellee had been in the grain business for more than twenty years and stays out of the gambling part of the business. It buys sufficient grain each day to meet the sales made on that day. For instance, if it should sell 10,000 bushels of grain to be delivered ten days from date it would buy that much grain on the same day and it would be shipped in time to reach the point of destination in the ordinary course of travel at the time it was due to be delivered to its customers. If the grain failed to reach Little Rock in time to be sent out and delivered to the customer, appellee would have to buy another car of grain in the city of Little Rock in order to fulfill its orders and would have to pay the market price therefor. In all cases where grain was delayed appellee would buy grain to fill its orders and put in a claim to appellant for the difference between the invoice price of the grain and the market price at Little Rock on the day that the shipment was due to arrive there. Of course when the market

price had fallen no claim would be put in. The claim would only be put in when the market price had risen. Appellee offered to permit appellant to take the delayed cars and handle them in its own way but appellant refused to do this. Appellee then took the cars to its own elevator and handled them to the best advantage possible. Frequently this resulted in a much greater loss than that for which the claim was put in to appellant but appellee has in no case put in a claim for this additional amount as damages.

The evidence adduced in favor of appellee tended to establish the above facts.

On the other hand appellant adduced evidence tending to show that six, seven or eight days was too short a time for the grain to reach Little Rock from the point of shipment; that the usual time was ten days or more. Counsel for appellant concedes that there was sufficient testimony upon which to base the finding of the court that appellant was liable for the grain lost or damaged in transit and that issue is not involved in this appeal. Counsel earnestly insists, however, that as to the great majority of the cars, that there was no unreasonable delay in delivering them. They insist that appellee's testimony is insufficient to prove that seven days is long enough time to allow for transporting a carload of grain from Davenport, Omaha and Council Bluffs to Little Rock and that it is improper to take the date of the bill of lading and count it as one of the seven days. Of course it might be that the grain would not be delivered to the carrier until late in the day on which the bill of lading is dated but a careful reading of the testimony in this case leads us to the conclusion that the day of the date of the bill of lading was not counted and the shipment was considered to arrive at Little Rock when it reached any point in the yards of the company even though it should require another day for it to be placed upon the proper side-track.

The testimony to the effect that seven days was a reasonable time for a shipment to arrive from the points

above named, to Little Rock, was given by officers and agents of appellee and by agents of other grain companies who were accustomed to handling many car loads of grain from the points named. Their testimony was based upon an experience extending over many years and they testified that from their experience most of the grain shipped from those points reached Little Rock seven days after the date of shipments.

(1)  Their testimony was sufficient to establish negligent delay on the part of the railroad company in carrying and delivering the grain to appellee. It is true that the officers and agents of appellee stated at the trial that they could not remember each shipment at that time, but they stated that their testimony was given from records made at the time each shipment was delayed and a claim was put in for the damages occasioned by the delay.

(2)  Again it is contended that the court erred in its declaration of law to the effect that appellee's measure of damages on the claims for delay was the difference between the market price of the grain at Little Rock on the date the grain should have arrived there and the market price thereof at the same place on the dates the grain did arrive. The measure of damages for negligent delay in the transportation of freight by a common carrier is the difference between the value of the freight at the time it was delivered and its value at the time it should have been delivered, unless the carrier had notice that special damages or more than ordinary damages would result from a failure to deliver in time. *C. R. I. & P. Ry. Co.* v. *Newhouse Mill & Lbr. Co.*, 90 Ark. 452, and cases cited; and *K. C. & Memphis Ry. Co.* v. *Oakley*, 115 Ark. 20.

(3)  Counsel for appellant concede that this is the general rule, but they contend that the rule is changed by the bill of lading under which each shipment was moved in the present case.

Section 3 of the bill of lading provides that no carrier is bound to transport the property by any par-

ticular train or vessel, or in time for any particular market or otherwise than by reasonable dispatch, unless by specific agreement endorsed on the back of the bill of lading. It also provides that the amount of any loss or damage for which any carrier is liable shall be computed on the basis of value of the property (being the *bona fide* invoice price, if any, to the consignee, including freight charge, if prepaid) at the place and time of shipment, under this bill of lading, unless a lower value has been represented in writing by the shipper.

We do not think the words "loss or damage" as used in the bill of lading refer to delay in transportation or delivery as contended for by counsel for appellant. We think the circuit court correctly held that these words were only applicable to cases where the goods were lost or damaged while in transit and that they did not refer to cases of negligent delay in transportation or delivery. It can be readily seen how they could apply to cases where the goods were lost or injured in transit. If the goods were lost the measure of damages to the shipper would be their invoice price. If the goods were injured the measure of damages would be the difference between the market value of the goods in their damaged condition and their invoice price. It is not apparent to us how this rule could be applied in the case of negligent delay in transportation like the present case. The effect of appellant's contention would be to deny the shipper damages in cases like the present where the goods were bought for re-sale and the shipper was unable to carry out his contract because of the negligent delay in transporting and delivering the goods by the carrier. We think the evident meaning of the word "loss or damage" as above stated refers to cases where the goods themselves are lost in transit or are physically injured while in transit.

(5) Finally it is insisted that some of the claims are barred by the three-year statute of limitations. We do not agree with counsel in this contention. The bill of lading issued by the railroad company is not only

an acknowledgment of the receipt of the goods for car-
riage but it is also a contract to carry safely and deliver
the goods in a reasonable time. *St. L., I. M. & S. R.
Co.* v. *Pape,* 100 Ark. 269. An action for damages
resulting from a delay from which the carrier is liable
may be founded on contract, even though the contract
of shipment does not specify any time within which the
transportation is to be completed, for a contract to
transport will be deemed to imply transportation within
a reasonable time. 6 Cyc. 448.

In the case of *C., R. I. & P. Ry. Co.* v. *Planters
Gin & Oil Co.,* 88 Ark. 77, the court held that where
a bill of lading does not fix the time within which freight
is to be transported, the law implies that the delivery
shall be made within a reasonable time, in view of the
circumstances, taking into account the mode of con-
veyance, the nature of the goods, the season of the
year, and the ordinary facilities for transportation
under the control of the carrier.

(6)   In the case of the *St. L., I. M. & S. R. Co.* v.
*Mudford ,* 44 Ark. 439, the court recognized that the
shipper could recover damages for delay of freight in
an action founded on contract.

Again in *C., R. I. & P. R. Co.* v. *Pfeifer,* 90 Ark.
524, the court said, that the falure to deliver the goods
within a reasonable time by the carrier is only a breach
of the contract of carriage, and the carrier is liable for
the damages incurred by reason of the delay; but the
owner cannot refuse to accept the goods on account
of the unreasonable delay in the carriage and sue for
conversion.

It follows that the five-year statute of limitation
applies and that none of appellee's claims were barred
by the statute of limitations.

The judgment will be affirmed.